UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIMBERLY M.,

                                              Plaintiff,

v.                                                                                                            5:24-cv-1304
                                                                                                            (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

MEGGESTO, CROSSETT, & VALERINO, LLP    KIMBERLY A. SLIMBAUGH, ESQ.
511 East Fayette Street
Syracuse, NY 13202
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION            JASON P. PECK, ESQ.
6401 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER

**I.    INTRODUCTION**

Kimberly M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for benefits. Dkt. No. 1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. Dkt. No. 9.

This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both

parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c) in accordance with General Order 18. *See* Dkt. Nos. 11, 12. For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion is granted, and the decision of the Commissioner is affirmed.

**II.    BACKGROUND**

On December 2, 2019, Plaintiff protectively filed an application for benefits alleging disability beginning on May 29, 2017. T. 964.[1] Her application was initially denied on July 6, 2020, and again upon reconsideration on February 5, 2021. *Id*.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. On July 22, 2021, Plaintiff and her attorney representative appeared before ALJ Robyn Hoffman via telephone. *See id*. at 50-80. At the hearing, Plaintiff amended her alleged onset date to April 30, 2019. *Id*. at 55.

On April 21, 2022, ALJ Hoffman issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA") at any time from the alleged onset date through the date of the decision. *See id*. at 15-31. The Appeals Council denied Plaintiff's request for review on April 24, 2023, rendering the ALJ's April 21, 2022, decision the final decision of the commissioner. *Id*. at 1-6.

Plaintiff filed a complaint in the Northern District of New York on June 16, 2022. *See Kimberly M. v. Commissioner of Social Security*, No. 5:23-CV-0726 (ML), Dkt. No. 1. On November 13, 2023, the Hon. Miroslav Lovric, United States Magistrate Judge, remanded the

---

[1] The Administrative Record/Transcript is found at Dkt. No. 6. Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

matter to the Social Security Administration for further administrative proceedings by stipulation of the parties. *Id.*, Dkt. No. 12. The Appeals Council issued an Order vacating the final decision of the Commissioner and remanding the case to an ALJ on December 13, 2023. T. 1078-79.

On June 13, 2024, Plaintiff and her attorney representative, reappeared before ALJ Hoffman via telephone. *See id*. at 1004-30. On August 9, 2024, ALJ Hoffman issued a decision finding Plaintiff was not disabled under the SSA at any time from April 30, 2019, the amended alleged onset date though March 31, 2023, the date last insured. *See id*. at 964-93.[2] Plaintiff timely commenced this action on October 24, 2024. *See generally*, Dkt. No. 1.

### III. LEGAL STANDARDS

#### A. Standard of Review [3]

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

---

[2] The Appeals Council did not review the ALJ's decision, therefore, the ALJ's August 9, 2024, decision became the final decision of the Commissioner. *See* Dkt. No. 11 at 5; Dkt. No. 12 at 3.

[3] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

### B. Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

> assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id*.

## IV. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for adjudicating disability claims.  *See generally*, T. 964-93.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the time of her alleged onset date though her date last insured.  *Id*. at 968.  Proceeding to step two, the ALJ determined Plaintiff had the following severe impairments: "lumbar spine degenerative disc disease, bilateral knee arthritis status post arthroscopy, and major depressive disorder."  *Id*.

At step three, the ALJ found, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id*. at 971.  The ALJ next determined, through her date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, more specifically, Plaintiff

> could occasionally lift and carry twenty pounds; could frequently lift and carry ten pounds; could sit for six hours and could stand and/or walk for six hours, all in an eight-hour workday with normal breaks; could occasionally climb ramps or stairs; could occasionally climb ladders, ropes, or scaffolds; could perform occasional balancing on uneven terrain, but was not limited in the ability to

> maintain balance on even terrain; could perform occasional stooping, kneeling, crouching, and crawling; could understand and follow simple instructions and directions; could perform simple tasks independently; could maintain attention/concentration for simple tasks; could regularly attend to a routine and maintain a schedule; could relate to and interact appropriately with all others to the extent necessary to carry out simple tasks and could handle simple, repetitive work-related stress in that she could make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require her to supervise nor manage the work of others.

*Id*. at 976.

At step four, the ALJ found Plaintiff had no past relevant work. *Id*. at 990. At step five, the ALJ determined, based on her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id*. at 991. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*. at 992.

**V.    DISCUSSION**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ "failed to properly assess the medical opinion of Dr. Elke Lorensen," and "failed to account for moderate limitations in [her] ability to maintain a work pace" and further avers the ALJ erred in failing to obtain testimony from a vocational expert at step five. Dkt. No. 11 at 15-22. Defendant contends the ALJ did not err in assessing Dr. Lorensen's opinion, the ALJ's RFC determination accommodated Plaintiff's ability to maintain work pace, and the ALJ was not required to obtain vocational expert testimony at step five. *See* Dkt. No. 12 at 5-15. The undersigned agrees with the Defendant.

**A.  The ALJ's RFC Determination is Supported by Substantial Evidence**

**1.  Assessment of Physical Consultative Examiner's Opinion**

Plaintiff first argues the ALJ erred in assessing the opinion of physical consultative examiner Dr. Lorensen, more specifically, the physical consultative examiner's opinion that

Plaintiff had "moderate" limitations in reaching. *See* Dkt. No. 11 at 15-18. Defendant asserts the ALJ properly complied with 20 C.F.R. § 404.1520c in assessing Dr. Lorensen's opinion. *See* Dkt. No. 12 at 5-9.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the regulations provide, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ found Dr. Lorensen's opinion had "some persuasive value insofar as it is consistent with reported results of her physical examination and the overall medical evidence of record as of the date of her examination." T. 985 (citing T. 678-82). Consultative examiner Dr. Lorensen opined Plaintiff had "moderate" limitations in bending, lifting, carrying, reaching, kneeling, and squatting. *Id*. at 681. However, with respect to Dr. Lorensen's reaching limitation, the ALJ concluded,

> I do not find that manipulative limitations are supported by the overall record of evidence or [the consultative examiner's] own physical examination of the claimant. As noted above, the claimant does not have a medially determinable severe impairment affecting her upper extremities despite the history of carpal tunnel syndrome bilaterally, findings on laboratory studies of her cervical spine, and other evidence. Even considering that the reaching limitation may be related to the claimant's lumbar spine disorder, the claimant's

8

> pain management treatment records do not support a finding that the claimant had chronic pain and problems related to reaching to support the limitation identified. As noted above, the claimant was generally able to perform activities that required good use of the upper extremities, such as showering, dressing, taking baskets of laundry up and down the stairs, and playing games on her phone. Allegations of the need for assistance caring for her hair due to pain putting her hands above her head were also considered, but not reflected in the various exams that show good hygiene and grooming. At times, the claimant indicated no significant difficulty showering and dressing daily. Not all sources noted manipulative limitations, including the independent medical examiner based on the exam closest in time to the amended alleged onset date of disability or the two State agency medical consultants based on review of records submitted by various medical sources at the initial and/or reconsideration level that included evaluation of the claimant's weight. Additionally, the consultative examiner did not identify any extreme limitations to support the degree of limitation in reaching alleged by the claimant and attributed her lumbar spine disorder and/or obesity. In fact, at times, the claimant acknowledged that she was able to perform above-shoulder work but with cervical pain and could reach forward 4-5 times before she experienced shoulder pain. Therefore, limitations for reaching are not adopted into the established residual functional capacity.

*Id*. at 985-86 (internal citations omitted). In light of the foregoing, Plaintiff's contention the ALJ "did not consider one of the primary factors of supportability in considering Dr. Loren[s]en's opinion regarding a moderate limitation in reaching," Dkt. No 11 at 15, is unavailing.

"[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position." *Megan Ann G. v. Comm'r of Soc. Sec.*, No. 5:23-CV-0298 (DNH/TWD), 2024 WL 4110742, at *5 (N.D.N.Y. Aug. 19, 2024) (citing *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)) (additional citation omitted), *report and recommendation adopted*, 2024 WL 4107708 (N.D.N.Y. Sept. 6, 2024). Rather, the relevant inquiry is "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v.*

9

*Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)) (additional citation omitted).

Here, as the ALJ explained, Dr. Lorensen's opined moderate limitations in reaching were inconsistent with record evidence reflecting that Plaintiff was able to perform activities which required use of the upper extremities prior to the date last insured. *See* T. 986 (citing T. 679, 694). Furthermore, as the Defendant points out, *see* Dkt. No. 12 at 7, while Dr. Lorensen did observe only 100 degrees of elevation and abduction in Plaintiff's shoulders, she also observed Plaintiff retained full flexion, extension, and bilateral lateral flexion, and rotary movement in the cervical spine; full range of motion in the elbows, forearms, and wrists bilaterally; physiologic and equal deep tendon reflexes in the upper extremities; had no sensory defects in the upper extremities; 5/5 strength in the upper extremities; 5/5 grip strength; and intact hand and finger dexterity. *See* T. 680. Moreover, as the ALJ noted, other opinion evidence did not include such restrictive reaching or manipulative limitations. *See id*. 986 (citing T. 629-39, 104-19, 121-45, 683-85, 876-77).

Next, while Plaintiff points to her recorded reports of back pain aggravated by overhead activities such as housework, *see* Dkt. No. 11 at 17, it is well established that "an ALJ is not required to discuss every piece of evidence submitted . . . [and a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (internal quotations and citation omitted). It is similarly well established that, "[t]o the extent there are conflicts in the medical record, it is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts . . . ." *Mario S. v. O'Malley*, No. 5:23-CV-1207 (AMN/DJS), 2024 WL 4956980, at *4 (N.D.N.Y. Oct. 10, 2024) (internal quotations and citation

omitted), *report and recommendation adopted sub nom. Mario M. S. v. Comm'r of Soc. Sec.*, 2024 WL 4825779 (N.D.N.Y. Nov. 19, 2024).

Insofar as Plaintiff asserts the ALJ "cherry-pick[ed]" evidence supporting Dr. Lorenson's restrictive reaching limitation, *see* Dkt. No. 11 at 15, "[w]hen the ALJ considers a Plaintiff's medical history, testimony, medical opinion evidence, and treatment records in reaching their conclusion of Plaintiff's capability, a plaintiff's characterization of cherry-picking in the decision is unsupported by the record." *Wendy L. K. v. Comm'r of Soc. Sec.*, No. 3:24-CV-241 (AJB/DJS), 2025 WL 1089519, at *5 (N.D.N.Y. Jan. 27, 2025), *report and recommendation adopted*, 2025 WL 679328 (N.D.N.Y. Mar. 4, 2025). Such is the case here, in light of the ALJ previously mentioned thorough analysis of the supportability and consistency of Dr. Lorensen's opined limitation. *See* T. 985-86. In other words, "irrespective of the presence of record evidence which could support" Dr. Lorensen's "more restrictive [reaching] limitation[], because the ALJ's determination is supported by substantial evidence, it must be upheld." *Penny M. v. Comm'r of Soc. Sec.*, No. 8:24-CV-0961 (MAD/TWD), 2025 WL 2548801, at *9 (N.D.N.Y. July 10, 2025) (citing *Rutherford*, 685 F.2d at 62), *report and recommendation adopted sub nom. Penny M. v. Bisignano*, 2025 WL 2408601 (N.D.N.Y. Aug. 20, 2025); *see also*, *e.g.*, *Regina M. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6629 (EAW), 2025 WL 899008, at *6 (W.D.N.Y. Mar. 25, 2025) ("Plaintiff's claims of cherry-picking essentially amount to an invitation for the Court to re-weigh the evidence of record, which it may not do.") (citations omitted).

Finally, Plaintiff argues "[t]he ALJ mischaracterized Dr. Lorensen's exam findings regarding the upper extremities when she stated the exam findings noted 'she had full range of motion in the upper extremities', which was not what Dr. Lorensen reported." Dkt. No. 11 at 17 (quoting T. 26); *see also* Dkt. No. 11 at 16 ("Dr. Elke Lorensen examined plaintiff on 3/17.2020.

11

Her findings noted 'forward elevation and abduction of the shoulders 100 degrees bilaterally.' As a result of the limited range of motion in the upper extremities, Dr. Lorensen opined plaintiff had moderate limitations for reaching.") (citing T. 680-81). However, Plaintiff cites page twenty-six of the administrative record, which contains ALJ Hoffman's April 21, 2022, decision, the ALJ's prior decision in this matter, which was vacated and is not currently before the Court. *See* T. 15-31. The ALJ's August 9, 2024, decision does not contain the same language. *See id*. at 964-93. The decision currently before the Court states during Dr. Lorensen's March 17, 2020, examination, Plaintiff "had full range of motion of bilateral upper extremities, *except for forward elevation and abduction of her shoulders past 100 degrees*." *Id*. at 982 (citing T. 680) (emphasis added).[4] Therefore, Plaintiff's claim the ALJ mischaracterized Dr. Lorensen's findings or erred in assessing the supportability of Dr. Lorensen's opinion is unpersuasive.

### 2. Ability to Maintain Work Pace

Plaintiff also contends the ALJ's RFC determination is not supported by substantial evidence because it failed to account for Plaintiff's moderate limitations in maintaining work pace. *See* Dkt. No. 11 at 21-22. Defendant avers the ALJ's RFC determination accommodated Plaintiff's pace limitations. *See* Dkt. No. 12 at 11-15.

At step three of the sequential evaluation process, the ALJ found the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of listings 12.04, 12.06, 12.15, and near listings. *See* T. 971. In reaching the aforementioned conclusion, the ALJ considered whether Plaintiff's mental impairment satisfied those listings' "paragraph B" criteria and found:

---

[4] *See also* T. 970 (explaining, at step two, that "[p]eriodic notations of reduced range of motion in the shoulders bilaterally . . . were also considered, but fail to support any additional medically determinable impairment though the date last insured.") (citing T. 680).

> With regard to concentrating, persisting, or maintaining pace, the claimant had no more than a moderate limitation through the date last insured. The claimant reported having trouble paying attention, getting distracted, and finishing what she starts . . . . However, at the consultative examination, the claimant's attention and concentration were noted to be intact. She started serial 7s task accurately but said it would take her longer to figure out the calculations with the larger number . . . . The claimant otherwise did single digit addition and subtraction and serial 3s task accurately. Dr. Seybold opined the claimant had no limitations in her ability to sustain concentration, perform tasks at a consistent pace, sustain an ordinary routine and regular attendance at work. Dr. Marks and Dr. Fassler reviewed available evidence and found that the claimant had moderate limitations in her ability to concentrate, persist, or maintain pace . . . . In light of the overall evidence, the claimant had more than mild limitations in this area, which was therefore rated as moderate.

*Id*. at 974 (citations omitted). Subsequently, at step four, the ALJ determined Plaintiff retained the RFC to perform a range of light work. *See id*. at 975-76.

As an initial matter, as Defendant notes, *see* Dkt. No. 12 at 12, the "paragraph B" criteria for evaluating the severity of mental impairments are "to be applied in determining the severity of a mental impairment, the third step prescribed by the disability evaluation guidelines, not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps." *Whipple v. Astrue*, 479 F. App'x 367, 369 (2d Cir. 2012) (citing 20 C.F.R. § 404.1520a(d); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)); *see also*, *e.g.*, *Plumley v. Comm'r of Soc. Sec.*, No. 5:15-CV-1229 (GTS/WBC), 2016 WL 7644866, at *9 (N.D.N.Y. Dec. 8, 2016) (explaining, "the analysis conducted at steps two and three of the sequential process are not an RFC assessment."), *report and recommendation adopted sub nom. Plumley v. Colvin*, 2017 WL 44842 (N.D.N.Y. Jan. 4, 2017). In other words, "there is no requirement that an ALJ use the same language from step two or three in the RFC analysis, so the absence of the words 'concentration, persistence, or pace' in the ALJ's RFC assessment is not *per se* error." *Irene v. Berryhill*, No. 6:18-CV-0038 (BKS), 2019 WL 1349560, at *24 (N.D.N.Y. Mar. 26, 2019) (citing *Peryea v. Comm'r of Soc.*

*Sec.*, No. 5:13-CV-0173 (GTS/TWD), 2014 WL 4105296, at *10 (N.D.N.Y. Aug. 20, 2014)) (additional quotations omitted).  Therefore, "to the extent Plaintiff contends that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination, such argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination." *Pidgeon v. Comm'r of Soc. Sec.*, No. 15-CV-6578 (CJS), 2017 WL 4680412, at *7 (W.D.N.Y. Oct. 18, 2017) (citing *Whipple*, 479 F. App'x at 369); *see also*, *e.g.*, *Michael G. v. Comm'r of Soc. Sec.*, No. 6:24-CV-1256 (DJS), 2026 WL 251992, at *4 (N.D.N.Y. Jan. 30, 2026) ("The determinations at Step Three and Step Four require distinct analysis.") (internal quotations and citation omitted).

Plaintiff argues "all unskilled jobs require, 'the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods . . . ,'" Dkt. No. 11 at 21 (citing Program Operations Manual System DI 25020.010), yet the ALJ's RFC determination "did not limit plaintiff to unskilled work or no production rate work, nor did it otherwise account for her moderate limitations in pace.  As the RFC did not include any reference to plaintiff's limitations regarding work pace the RFC is not supported by substantial evidence." *Id*. at 22.  However, as Defendant emphasizes, *see* Dkt. No. 12 at 13, the ALJ's finding that Plaintiff had moderate limitations in the domain of concentrating, persisting, or maintaining pace, was based on the opinions of Dr. Marks and Dr. Fassler.  *See* T. 974 (citing T. 111, 132).  Yet, both Dr. Marks and Dr. Fassler concluded Plaintiff was "*able to sustain a normal workday and work week.*" *Id*. at 117; 142 (emphasis added).

In any event, the ALJ's determination that Plaintiff retained the RFC to "understand and follow simple instructions and directions," "perform simple tasks independently," "maintain

14

attention/concentration for simple tasks," "regularly attend to a routine and maintain a schedule," "relate to and interact appropriately with all others to the extent necessary to carry out simple tasks," and "handle simple, repetitive work-related stress in that she could make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require her to supervise nor manage the work of others," T. 976, "is 'fully consistent with the observation that Plaintiff has moderate limitations in concentration, persistence, and pace.'" *Irene*, 2019 WL 1349560, at *24 (citing *Coleman v. Comm'r of Soc. Sec.*, 335 F.Supp.3d 389, 401 (W.D.N.Y. 2018) (explaining, RFC for work requiring "sufficient attention and concentration to understand, remember and follow simple instructions" was not inconsistent with step three finding of moderate limitations in concentration, persistence, and pace); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). Accordingly, Plaintiff's contention the ALJ's RFC is unsupported in this respect is unpersuasive.

### B. The ALJ Did Not Err in Declining to Obtain Vocational Expert Testimony

Finally, Plaintiff contends the ALJ should have obtained vocational witness testimony. *See* Dkt. No. 11 at 18-20. Defendant argues no expert testimony was required to support the ALJ's step five conclusion. *See* Dkt. No. 12 at 9-11.

As previously explained, at step five of the sequential disability evaluation, the Commissioner bears the burden of proving, despite the claimant's severe impairments, she is capable of performing work available in the national economy. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). "In the ordinary case the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines (the grids) . . . ." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (citation omitted).

15

"Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also*, *e.g.*, *Charlebois v. Comm'r, Soc. Sec. Admin.*, No. 6:02-cv-0686 (LEK/GJD), 2003 WL 22161591, at *10 (N.D.N.Y. Sept. 12, 2003) (explaining, "[i]f a claimant is unable to perform a full range of a particular exertional category of work, or the issue is whether a claimant's work skills are transferable to other jobs, the ALJ may utilize the services of a vocational expert.") (citing 20 C.F.R. §§ 404.1566, 416.966). As the Second Circuit Court of Appeals has explained:

> If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments.

*Bapp*, 802 F.2d at 605 (internal quotations and citation omitted); *see also*, *e.g.*, *Eugene David M. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0529 (FJS/TWD), 2022 WL 18587762, at *9 (N.D.N.Y. Sept. 29, 2022) (explaining, "if a claimant suffers from nonexertional impairments that 'significantly limit the range of work permitted by exertional limitations,' the ALJ should elicit testimony from a VE to determine if jobs exist in the economy that the claimant can still perform.") (quoting *Pratts*, 94 F.3d at 39) (additional citations omitted), *report and recommendation adopted*, 2023 WL 118758 (N.D.N.Y. Jan. 6, 2023).

In this context, "[a] non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive h[er] of a meaningful employment opportunity.'" *Tiffany G. v. Kijakazi*, No. 6:21-CV-0385 (FJS), 2022 WL 3027144, at *9 (N.D.N.Y. July 29, 2022) (quoting *Zabala v. Astrue*, 595 F.3d 402, 410-11

(2d Cir. 2010)) (additional citations omitted).  Therefore, "the existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a VE . . . . Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible." *Eugene David M.*, 2022 WL 18587762, at *9 (citing *Zabala*, 595 F.3d at 411); *see also Shawn C. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1378, 2022 WL 17037624, at *5 (W.D.N.Y. Nov. 17, 2022) ("Exclusive use of the Grids is precluded, and VE testimony is required, only 'where the claimant's exertional impairments are compounded by significant nonexertional limitations' that limit the range of work.") (quoting *Rosa*, 168 F.3d at 78).  Finally, "'[a]n ALJ's determination of whether a claimant's nonexertional limitations significantly impact his ability to perform work constitutes a finding of fact, subject to deferential review.'" *Tashona R. D. v. Comm'r of Soc. Sec.*, No. 5:23-CV-0583 (AMN/CFH), 2024 WL 4442722, at *9 (N.D.N.Y. Aug. 12, 2024) (quoting *Shawn C.*, 2022 WL 17037624, at *5), *report and recommendation adopted*, 2024 WL 4274819 (N.D.N.Y. Sept. 24, 2024).

Plaintiff asserts the ALJ's "finding that plaintiff has no loss in the ability to perform the basic mental demands of unskilled work under SSR 85-15 [is] conclusory.  The[re] was no explanation as to how plaintiff[']s limitation to simple work-related stress would cause only a negligible loss in work capacity for unskilled work." Dkt. No. 11 at 20.  In so arguing, Plaintiff emphasizes the ALJ's finding that her

> mental impairment limited her to "relate to and interact appropriately with all others to the extent necessary to carry out simple tasks.  She can handle simple, repetitive work-related stress in that she can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require her to supervise nor manage the work of others."

*Id*. (quoting T. 976).  However, such limitations are consistent with the requirements of unskilled work.  *See*, *e.g.*, *Zabala*, 595 F.3d at 411 ("The ALJ found that Petitioner's mental condition did

17

not limit her ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision. Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical-Vocational Guidelines was permissible.").

Here, the ALJ supportably determined Plaintiff retained the RFC to: "understand and follow simple instructions and directions;" "perform simple tasks independently;" "maintain attention/concentration for simple tasks;" "regularly attend to a routine and maintain a schedule;" "relate to and interact appropriately with all others to the extent necessary to carry out simple tasks;" and "handle simple, repetitive work-related stress in that she could make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require her to supervise nor manage the work of others." T. 976. Courts in this district have consistently concluded ALJs' reliance on the grids was not improper in finding claimants with the same nonexertional limitations were not disabled.

For example, in *Crystal L. C. v. Comm'r of Soc. Sec.*, the court concluded "substantial evidence support[ed] the ALJ's conclusion that Plaintiff's nonexertional limitations did not significantly limit the range of unskilled light work she could perform, therefore, the ALJ's use of the grids to reach a finding of not disabled at step five was not erroneous," where, as here, the ALJ found the plaintiff could "'relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; and' . . . 'handle simple, repetitive work-related stress, in that she can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require her to supervise or manage the work of others.'" No. 5:24-CV-0732 (BKS/TWD), 2025 WL 2933190, at *5-6 (N.D.N.Y. Mar. 24, 2025), *report and recommendation adopted*, 2025 WL 2726720 (N.D.N.Y. Sept. 25, 2025).

18

Similarly, in *Bridget S. v. Kijakazi*, where the ALJ assessed the claimant was "capable of working in [an environment] that involves occasional decision-making . . . and occasional use of judgment," the court noted such limitations were "all included in the ability to perform unskilled work." No. 6:20-CV-1440 (ATB), 2022 WL 2046364, at *13 (N.D.N.Y. June 7, 2022). Accordingly, the reviewing court determined "the ALJ was justified in using the Grid as a framework . . . to determine that plaintiff was not disabled." *Id*. Moreover, in *Eugene David M.*, this court found "the ALJ properly found there were a significant number of jobs in the national economy that Plaintiff could perform, using the grids as a framework, and the testimony of a VE was not required," where the ALJ concluded the claimant could "understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact appropriately with all others to the extent necessary to carry out simple tasks" and "handle simple, repetitive, work-related stress in that he can make occasional decisions, directly related to the performance of simple tasks, in a position with consistent job duties, that does not require him to supervise or manage the work of others." 2022 WL 18587762, at *4, *10 (internal quotations and citations omitted).

      Finally, insofar as Plaintiff contends the ALJ failed to consider the combined effects of all of her nonexertional limitations, *see* Dkt. No. 11 at 20, in light of the ALJ's preceding thorough assessment of Plaintiff's postural limitations and SSRs 83-14 and 85-15, the undersigned is unpersuaded. *See* T. 991-92; *see also*, *e.g.*, *Crystal L. C.*, 2025 WL 2933190, at *5. In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's nonexertional limitations did not so significantly limit the remaining occupational base of unskilled light work

available to her. Therefore, the ALJ's reliance on the grids, rather than vocational expert testimony, to reach a finding of "not disabled" at step five was not erroneous.

Accordingly, Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion is granted, and the decision of the Commissioner is affirmed.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision be **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close the case.

Dated: February 10, 2026
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge